IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>          Plaintiff, )<br>)<br>v. )<br>)<br>475 COTTAGE DRIVE, MOUNT AIRY, )<br>SURRY COUNTY, NORTH CAROLINA, )<br>WITH ALL APPURTENANCES AND )<br>IMPROVEMENTS THEREON, )<br>          Defendant. ) | No. 1:02CV00898 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This civil forfeiture action was tried before this Court at a bench trial on April 3-4, 2006. Based on a preponderance of the evidence presented at that trial, the Court makes the following findings of fact:

1. On October 18, 2002, Plaintiff United States filed this civil forfeiture action pursuant to 21 U.S.C. § 881(a) against the Defendant Real Property known as 475 Cottage Drive, Mt. Airy, Surry County, North Carolina, on the grounds that the property was used or intended to be used to commit or to facilitate the commission of a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., punishable by more than one year's imprisonment, or constitutes proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act. On April 7, 2003, Clayton Willis filed an Answer to the Complaint.[1]

---

[1] On May 30, 2003, Carol Midkiff Mills, Claimant Willis' ex-wife, filed an answer setting forth a claim to the real property. Carol Midkiff Mills has entered into a settlement agreement with the United States regarding her claim in the property, and her claim therefore will not be

2. For more than fifteen years, Claimant Clayton Willis has sold and distributed illegal narcotics in Surry County, North Carolina. During much of this time he used a store known as Bannertown Superette, 1514 South Main Street, Mount Airy, Surry County, North Carolina, as a front for conducting his illegal drug distribution network. At Bannertown Superette, Claimant Willis conducted a wide range of illegal activities under the guise of a convenience store, including drug trafficking, food stamp fraud (exchanging Food Stamps for cash and prohibited items, including "crack" cocaine), sale and receipt of stolen goods, gambling in violation of state law, and money laundering to conceal the source of his ill gotten gain and to promote ongoing operations.

3. On May 7, 1996, an Investigative Operative operating in an undercover capacity and working under the direction of the Office of the Inspector General (OIG-IG), USDA, sold or trafficked $260.00 worth of USDA food stamps to Clayton Willis in exchange for nine (9) rocks of "crack" cocaine (.9 grams of cocaine). The transaction took place inside Bannertown Superette.

4. On May 10, 1996, an Investigative Operative operating in an undercover capacity and working under the OIG-IG's direction, sold or trafficked $365.00 worth of USDA food stamps to Clayton Willis in exchange for twelve (12) rocks of "crack" cocaine (1.2 grams of cocaine). The transaction took place inside Bannertown Superette.

---

addressed further.

5. On June 6, 1996, an Investigative Operative operating in an undercover capacity, working under the OIG-IG's direction, sold or trafficked $195.00 worth of USDA food stamps to Clayton Willis in exchange for five (5) rocks of "crack" cocaine (.6 grams of cocaine). The transaction again took place inside Bannertown Superette.

6. On July 24, 1996, USDA Special Agent Kelley Smith sold $460.00 worth of USDA food stamps to Clayton Willis in exchange for $80.00 cash and two (2) rocks of "crack" cocaine. This transaction took place at the Bannertown Superette. The aforementioned transactions constituted the basis for state and federal charges against Claimant Willis.

7. Claimant Willis was indicted in the Middle District of North Carolina on or about August 26, 1996 in a fifteen-count indictment charging him with violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c), distribution of cocaine base ("crack"), and 7 U.S.C. § 2024, Food Stamp Fraud. Willis entered into a plea arrangement and agreed to plead guilty in U.S. District Court to four counts of food stamp fraud. Willis also agreed to administratively forfeit $281,607.77 seized from a bank account, as well as his business, the Bannertown Superette, pursuant to 21 U.S.C. § 881. On February 12, 1997, Willis was sentenced to twelve months in prison and a $10,000.00 fine and ordered to pay $2,450.00 in restitution by U.S. District Court Judge Frank W. Bullock, Jr.

8. Claimant Willis also pled guilty in Superior Court in Surry County, North Carolina, to the following North Carolina state offenses:

97CRS 1962    Sell and Deliver Cocaine:    Offense Date 7-24-96

97CRS 1963    Sell and Deliver Cocaine:    Offense Date 4-03-96

97CRS 1964    Sell and Deliver Cocaine:    Offense Date 4-22-96

97CRS 1965    Sell and Deliver Cocaine:    Offense Date 4-29-96

97CRS 1966    Sell and Deliver Cocaine:    Offense Date 5-02-96

97CRS 1967    Sell and Deliver Cocaine:    Offense Date 5-07-96

97CRS 1968    Sell and Deliver Cocaine:    Offense Date 5-10-96

97CRS 1969    Sell and Deliver Cocaine:    Offense Date 5-23-96

97CRS 1970    Sell and Deliver Cocaine:    Offense Date 6-06-96

9.     Claimant Willis was incarcerated in state and federal facilities from the time of his convictions in 1996 until approximately December 1997.

10.    Shortly after his release from prison, Claimant Willis began trafficking in "crack" cocaine again, this time from his residence at 475 Cottage Drive, Mt. Airy, Surry County, North Carolina, since his store, Bannertown Superette, had been forfeited to the United States for facilitating drug and money laundering offenses. Claimant Willis' residence provided a secluded location to conduct his drug activities. The house lies in a wooded area at the end of a private drive which circles the house, effectively concealing activity at the rear from public view. Suppliers and customers exchanged drugs behind the house or inside, after entering through the

rear. Claimant Willis used the house to store drugs and drug money and to conduct and facilitate "crack" cocaine sales within the house and on the property.

11.     On October 8, 2002, detectives of the Surry County Sheriff's Department, along with detectives of the Allegheny County Sheriff's Department, utilized an Allegheny County Sheriff's Department (ACSD) Confidential Source of Information to make a controlled purchase of approximately eighty dollars ($80.00) worth of "crack" cocaine from Claimant Willis at his residence at 475 Cottage Drive.

12.     On October 10, 2002, detectives of the Surry County Sheriff's Department (SCSD), along with detectives of the ACSD, utilized an ACSD Confidential Source of Information to make a controlled purchase of approximately one hundred dollars ($100.00) worth of "crack" cocaine from Claimant Willis at his residence at 475 Cottage Drive.

13.     On October 14, 2002, detectives of the SCSD, along with detectives of the ACSD, utilized an ACSD Confidential Source of Information to make a controlled purchase of approximately one hundred dollars ($100.00) worth of "crack" cocaine from Claimant Willis at 475 Cottage Drive. On that occasion, the Confidential Source of Information brought ACSD Deputy Carlton Edwards (who was acting in an undercover capacity) along and introduced him to Claimant Willis as a "crack" cocaine purchaser. Later that evening, Deputy Edwards returned to 475 Cottage Drive two (2) more times and made one hundred dollar ($100.00) purchases of "crack" cocaine from Claimant Willis each time he returned. Following these purchases, the

detectives obtained a North Carolina State Superior Court search warrant for the residence at 475 Cottage Drive.

14. On October 15, 2002, detectives of the Surry and Allegheny Sheriff's Departments, along with Bureau of Alcohol, Tobacco, and Firearms (BATF) Special Agents Chris Olson and Mark Triplett, executed the state search warrant at 475 Cottage Drive. As detectives were attempting to gain entry to the residence, Claimant Willis attempted to flush a quantity of "crack" cocaine down the toilet. Upon making entry, the detectives apprehended Claimant Willis and recovered a quantity of "crack" cocaine from the bathroom. The detectives also recovered two firearms from the residence and a total of $890,718.00 in U.S. Currency (USC).

15. Claimant Willis was advised of his Miranda Rights by SCSD Lt. Graham Atkinson, and agreed to be interviewed by S/A Triplett and Lt. Atkinson. Claimant Willis stated that he began selling "crack" cocaine in 1994 and was arrested by the USDA for trading "crack" cocaine for food stamps. Claimant Willis stated that he began selling "crack" cocaine again in 2001 and further stated that he averaged selling Three Hundred Dollars ($300.00) worth of "crack" cocaine every two weeks during 2001 and 2002.

16. Willis was indicted in the Middle District of North Carolina on or about February 24, 2003 in a one-count indictment charging him with violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of a firearm by a convicted felon. Willis pled guilty in U.S. District Court

6

to the indictment. On July 24, 2003, Willis was sentenced to 32 months in prison and a $5,000.00 fine by U.S. District Court Judge James A. Beaty, Jr.

17. Claimant Willis was also convicted, pursuant to his guilty plea, of multiple felony drug charges in state court, as shown below, arising from the aforementioned drug offenses conducted in his residence, including Maintaining a Dwelling in violation of N.C. Gen. Stat. § 90-108(a)(7), Selling a Schedule II Controlled Substance in violation of N.C. Gen. Stat. § 90-108(a)(7), Felony Possession of Cocaine in violation of N.C. Gen. Stat. § 90-95(d)(2), and Possession with Intent to Distribute Cocaine in violation of N.C. Gen. Stat. § 90-95(a):

02CRS 54157 Maintain a Dwelling  Offense Date 10-14-02

02CRS 54154 Maintain a Dwelling  Offense Date 10-15-02

02CRS 54152 Maintain a Dwelling  Offense Date 10-14-02

02CRS 54151 Maintain a Dwelling  Offense Date 10-14-02

02CRS 54150 Maintain a Dwelling  Offense Date 10-10-02

02CRS 54148 Maintain a Dwelling  Offense Date 10-08-02

02CRS 54156 Selling Sch. II Drug Offense Date 10-14-02

02CRS 54147 Selling Sch. II Drug Offense Date 10-14-02

02CRS 54145 Selling Sch. II Drug Offense Date 10-14-02

02CRS 54144 Selling Sch. II Drug Offense Date 10-10-02

02CRS 54143 Selling Sch. II Drug Offense Date 10-10-02

02CRS 54142 Poss.w/Intent to Sell/Distribute Cocaine Offense Date 10-14-02

02CRS 54141 Poss.w/Intent to Sell/Distribute Cocaine Offense Date 10-14-02

02CRS 54140 Poss.w/Intent to Sell/Distribute Cocaine Offense Date 10-14-02

02CRS 54139 Poss.w/Intent to Sell/Distribute Cocaine Offense Date 10-10-02

02CRS 54138 Poss.w/Intent to Sell/Distribute Cocaine Offense Date 10-08-02

02CRS 54153 Felony Possession of Cocaine Offense Date 10-15-02

18. On October 18, 2002, the United States filed its lis pendens against the Defendant Real Property. The record owner of the real property was Carrie Gwyn, who purchased the residence at Willis' requests during Willis' divorce in 1980, with the understanding that Willis would repay the money to her. Gwyn recently transferred the title back to Willis by quit-claim deed.

19. During the trial of this case, the United States presented testimony of many witnesses who have sold illegal drugs to, or purchased illegal drugs from, Claimant Willis, both at Bannertown Superette and at his residence at 475 Cottage Drive in Mount Airy, North Carolina. These witnesses described how Claimant Willis for years used Bannertown Superette as a front for drug trafficking and money laundering, as when he would exchange Food Stamps for "crack" cocaine and then redeem the Food Stamps through the store's bank account, and other illegal activities. These witnesses described how Claimant Willis for years used his residence at 475 Cottage Drive, to receive, store, and distribute marijuana and "crack" cocaine.

20. Vickie Church, an employee of Bannertown Superette from 1988 until 1996, testified before the Court that she personally observed Claimant Willis distribute "crack" cocaine from Bannertown Superette. Vickie Church was not aware of the quantities of "crack" cocaine that were distributed but witnessed numerous transactions involving Claimant Willis. Vickie Church testified that she personally observed at least six drug transactions a day that eventually increased to fifteen transactions a day.

21. Kenny Church testified before the Court that he was involved in the purchase and distribution of marijuana and cocaine with Claimant Willis. Kenny Church testified that between 1987 and early 1996 he purchased for himself and others, two ounces of marijuana a week from Willis for one hundred dollars an ounce. Kenny Church testified that the transactions took place at Bannertown Superette and Claimant Willis' residence located at 475 Cottage Drive. Kenny Church testified that he purchased "crack" cocaine from Claimant Willis for four months before Claimant Willis was arrested at Bannertown Superette. Kenny Church testified that from November 2000 until August 2002 he delivered "crack" cocaine to Claimant Willis at 475 Cottage Drive. Kenny Church testified that he delivered the "crack" cocaine to Claimant Willis under the direction of Don Thompson. Kenny Church testified that he delivered one to two ounces a week during the aforementioned period. Kenny Church testified that Claimant Willis paid $1,000.00 an ounce for the "crack" cocaine. Based on Kenny Church's testimony, it is estimated that Claimant Willis distributed approximately 936 ounces of marijuana over approximately nine

9

years and received between 96 and 192 ounces of cocaine during a twenty-one month period from 2000-2002.

22. Tammy Harrell testified before the Court that she resided at 475 Cottage Drive for one year. Tammy Harrell testified that she used "crack" cocaine and that Claimant Willis provided $50.00 to $200.00 worth of "crack" cocaine a day during this time period in exchange for sex. Based upon Tammy Harrell's testimony, she received $18,200.00 to $73,000.00 worth of "crack" cocaine from Claimant Willis.

23. Jerry Hinshaw testified before the Court that for a ten year period from the mid 1980s until the mid 1990s he purchased "crack" cocaine from Claimant Willis at Bannertown Superette and 475 Cottage Drive. Jerry Hinshaw stated that he purchased between $60.00 and $300.00 worth every week except for a sixteen-month period that Jerry Hinshaw was in custody. Based upon Jerry Hinshaw's testimony, it is estimated that he purchased between $27,000.00 and $135,000.00 worth of "crack" cocaine from Claimant Willis.

24. Jerry Hatcher testified before the Court that he had known Claimant Willis for approximately 35 years. Jerry Hatcher testified that in the 1970s he purchased Qualudes from Claimant Willis. Jerry Hatcher testified that from 1994 until 2002 he purchased "crack" and powder cocaine from Claimant Willis at Bannertown Superette and 475 Cottage Drive. Jerry Hatcher testified that he purchased one or two ounces of "crack" cocaine a week from Willis at 475 Cottage Drive during 1994-1995, 1999-2000 and 2001-2002. Jerry Hatcher testified that he

10

estimated that he spent more that $200,000.00 on cocaine that he received from Claimant Willis. Based upon Jerry Hatcher's testimony, he purchased between 208 ounces and 416 ounces of "crack" cocaine during the aforementioned periods. Jerry Hatcher testified that he paid $950.00 to $1,100.00 an ounce depending upon if he paid cash or if his "crack" cocaine was provided by Claimant Willis on "front" for payment to be received later.

25. Joel Ceasar testified before the Court that he supplied Claimant Willis with "crack" cocaine from August 2000 until October 2002. Joel Ceasar testified that he would sell Claimant Willis one ounce of cocaine at the first of the month at Claimant Willis' residence located at 475 Cottage Drive. Joel Ceasar testified that on seven other occasions he sold an additional ounce of cocaine during the middle of the month. Joel Ceasar testified that on ten occasions he sold Claimant Willis two ounces of cocaine. Joel Ceasar testified that he sold Claimant Willis each ounce for $1,000.00 except for when he sold Claimant Willis two ounces for $1,800.00. Based upon Joel Ceasar's testimony, Joel Ceasar sold 43 ounces of "crack" cocaine to Claimant Willis at 475 Cottage Drive during the aforementioned periods. Ceasar also testified that when he showed up with two ounces of crack and offered Willis a special deal of $1,800.00 instead of $2,000.00, Willis would go elsewhere in the house and be back in a few minutes with the additional eight hundred dollars.

26. Paul Swinson testified before the Court that he purchased "crack" cocaine from Claimant Willis every week for two years at Claimant Willis' residence located at 475 Cottage Drive. Paul

11

Swinson testified that he purchased between $50.00-$100.00 worth of "crack" cocaine each week during this time period. Based on Paul Swinson's testimony, he purchased between $5,200.00 and $10,400.00 worth of "crack" cocaine from Claimant Willis.

27. Kathy Clark testified before the Court that she purchased "crack" cocaine from Claimant Willis during 1993-1994 at Bannertown Superette and at Claimant Willis' residence at 475 Cottage Drive. Kathy Clark testified that she purchased between $20.00-$30.00 worth of "crack" cocaine each week during this time period. Based on Kathy Clark's testimony, she purchased between $2,080.00 and $3,120.00 worth of "crack" cocaine from Claimant Willis.

28. Jackie Dobson testified before the Court that she resided at 475 Cottage Drive for one and one-half to two years. Jackie Dobson testified that she used "crack" cocaine and that Claimant Willis provided her with significant quantities of "crack" every day in "chunks at a time" during this time period in exchange for sex.

29. Scottie Simmons testified before the Court that he supplied Claimant Willis with "crack" cocaine from August 2000 until February 2001. Scottie Simmons testified that he would sell Claimant Willis one or two ounces of cocaine every week or two. Scottie Simmons stated that these transactions were conducted through a third party named "Jo Jo". Scottie Simmons testified that he sold Claimant Willis each ounce for $1,000.00. Based upon Scottie Simmons' testimony, Scottie Simmons sold between 15 and 60 ounces of "crack" cocaine to Claimant Willis during the aforementioned periods.

30. Nathalia McKinney testified that she delivered one ounce of "crack" cocaine for "Lightbread" and another ounce of "crack" cocaine to Willis for "Pooh" and that Willis provided her with "crack" cocaine at Claimant Willis' residence located at 475 Cottage Drive.

31. Robert Joseph testified before the Court that he purchased "crack" cocaine from Claimant Willis every week for two years at Claimant Willis' residence located at 475 Cottage Drive. Robert Joseph testified that he purchased $300.00 worth of "crack" cocaine each week during this time period. Based on Robert Joseph's testimony, he purchased $31,200.00 worth of "crack" cocaine from Claimant Willis.

32. Susie Wright testified before the Court that she traded food stamps for crack with Claimant Willis at Bannertown Superette. Susie Wright also stated that she went with Kevin Smith to Claimant Willis' residence located at 475 Cottage Drive to deliver "crack" cocaine. Susie Wright testified that she witnessed Kevin Smith deliver between one and five ounces of "crack" cocaine to Claimant Willis.

33. Based upon testimony before the Court, the Government established that Claimant Willis has been involved in the distribution and sale of marijuana, cocaine and "crack" cocaine for several years at Claimant Willis' residence located at 475 Cottage Drive. The Government identified several sources of supply and identified individuals to whom Willis distributed controlled substances. Based upon the testimony, Claimant Willis received between 157 and 302 ounces of "crack" cocaine. Claimant Willis would purchase the "crack" cocaine for $1,000.00 an

13

ounce and then distribute the cocaine in $20.00 quantities. Based upon the lab reports submitted, the $20.00 rocks of "crack" cocaine would weigh approximately a tenth of a gram. Based upon these calculations, it is estimated that Claimant Willis would have sold between $903,990.00 - $1,726,140.00 worth of "crack" cocaine. Based upon testimony before the Court, Willis also distributed approximately 936 ounces of marijuana to Kenny Church at $100.00 an ounce. The individuals that testified that they purchased "crack" cocaine and marijuana from Claimant Willis corroborated the aforementioned drug quantities.

34. Claimant Willis' testimony denying any connection between the Defendant Real Property and his drug trafficking activity was incredulous and not worthy of belief. For example, Claimant Willis denied knowing Scottie Simmons, Jerry Hinshaw, Jerry Hatcher, and others who testified in detail of the many drug transaction done at Willis' residence, and who specifically testified regarding the interior layout of Willis' residence at 475 Cottage Drive and the general procedure for drug transactions through the rear door at Willis' residence. In his testimony Willis also denied knowing what "crack" was until 1996. Willis also testified that he did not flush "crack" cocaine down the toilet prior to the entry of the police officers on October 14, 2002. The testimony of Jerry Hatcher, Vickie Church, Kenny Church, Susie Wright, Jerry Hinshaw, and Tammy Harrell all confirm the fact that Willis knew what "crack" cocaine was prior to 1996 and that he actually sold "crack" cocaine at Bannertown Superette and at his residence located at 475 Cottage Drive. It is also clearly evident from the testimony of the

14

Case 1:02-cv-00898-JAB   Document 61   Filed 05/25/06   Page 14 of 19

officers and pictures from the search that Willis did flush "crack" cocaine down the toilet prior to the entry of the police officers on October 14, 2002. Willis' testimony implicates himself in drug transactions at his residence, and his attempt to minimize or deny additional drug activity was not credible.

CONCLUSIONS OF LAW

Having made these Findings of Fact, the Court will now turn to the relevant statutory scheme and will make the following Conclusions of Law. First, the Court notes that the Government's action against the Defendant Real Property was brought pursuant to 21 U.S.C. § 881(a), which provides, in pertinent part:

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> . . .
>
> (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

Thus, 21 U.S.C. § 881 (a)(7) authorizes the forfeiture of any real property used to commit or to facilitate the commission of a felony violation of Title 21. Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2000), the Government has the burden of establishing, by a preponderance of the evidence, that the defendant property is

15

forfeitable. 18 U.S.C. § 983(c)(1). Under CAFRA, forfeiture of facilitating property requires a "substantial connection" between the offense and the property. 18 U.S.C. § 983(c)(3). Even prior to CAFRA's enactment, many courts applied the "substantial connection" test to civil forfeitures of facilitating property. See, e.g., United States v. Borromeo, 995 F.2d 23 (4th Cir. 1993). However, as the Fourth Circuit has explained, "[t]he hurdle posed by the 'substantial connection' requirement is not . . . a particularly high one." Borromeo, 995 F.2d at 26. Under this test:

> the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. At minimum, the property must have more than an incidental or fortuitous connection to criminal activity.

United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990).

In the present case, based on the evidence presented at trial, the Court concludes that the Government has met its burden of establishing, by a preponderance of the evidence, that the Defendant Real Property is subject to forfeiture, and that there was a substantial connection between the Defendant Real Property and the offense giving rise to forfeiture. See 18 U.S.C. § 983(c). Specifically, the Defendant Real Property is subject to forfeiture because it was used to commit or facilitated the commission of felony drug offenses.[2] The evidence demonstrates that

---

[2] Title 21, U.S.C. § 841(a)(1) provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally – (1) to . . . distribute . . . a controlled substance . . .." Sections 841(b)(1)(A) and (B) are the applicable penalty sections and require a term of imprisonment of not less than five years if the violation involves 5 grams or more of a mixture or substance which contains cocaine base, and not less than ten years if the violation involves 50 grams or more of a mixture or substance which contains cocaine base. 21 U.S.C. §§ 841(b)(1)(A)(iii) and (B)(iii).

a substantial amount of drug transactions and illegal drug activity occurred at 475 Cottage Drive over more than a decade[3] ending with the arrest of Clayton Willis on October 15, 2002. Both suppliers and customers testified to hundreds of transactions in which Willis bought, sold, or dispensed marijuana, cocaine or cocaine base ("crack") at his residence. The suppliers and customers were aware of the fact that Willis' residence, the Defendant Real Property, lies in a wooded area at the end of a private drive which circles the house, effectively concealing activity at the rear from public view. Suppliers and customers acknowledged that they exchanged drugs behind the house or inside, after entering through the rear. Willis, who admitted to very little that was unfavorable to him, admitted that he cut "crack" cocaine in the first floor bathroom prior to selling it to a confidential informant and an undercover agent on October 14, 2002, and

---

[3]Although Claimant Willis used the property for drug transactions for over a decade, the connection between Claimant Willis' drug transactions and his residence was not discovered by the Government until 2002. Pursuant to 19 U.S.C. § 1621, which applies in drug forfeiture cases, the forfeiture action must be commenced "within five years after the time when the alleged offense was discovered or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later." 19 U.S.C. § 1621; see also 21 U.S.C. § 881(d) (incorporating the customs law statutes of limitations for use in drug forfeiture cases); United States v. Carrell, 252 F.3d 1193, 1205-07 (11th Cir. 2001) (noting that the limitations period is tolled "during any time of concealment, which enables the government to file a civil forfeiture action when it learns or discovers the involvement . . . of the property" with drug transactions or proceeds). In the present case, Claimant Willis concealed the use of his residence for drug transactions, and also concealed the ownership of the property by allowing title to remain in the name of Carrie Gwyn. The connection between the residence and Claimant Willis' illegal drug activity was discovered and established only after Claimant Willis engaged in drug transactions with Confidential Informants at the residence in October 2002. This forfeiture action was thereafter commenced in a timely manner only a few days later on October 18, 2002.

admitted that a portion of that crack was still in the bathroom when agents searched his home the next day. Willis also admitted to dealing in crack on the property on other occasions. The evidence is more than sufficient to establish a substantial connection between the real property and the activity which gives rise to the forfeiture. Based on the evidence presented, the Court concludes that the property was instrumental in facilitating Claimant Willis' drug trafficking activity in an integral and essential way, that Claimant Willis' use of the property in his drug activity was deliberate and planned, and that the involvement of the property was not simply incidental or fortuitous as Claimant Willis contends.

Once the Government establishes by a preponderance of the evidence that property is subject to forfeiture, the claimant may attempt to prove by a preponderance of the evidence that he is an innocent owner of the property. 18 U.S.C. § 983(d)(1). This Willis failed to do. His admission of drug activity on the premises precludes a finding that he "did not know of the conduct giving rise to the forfeiture" or "was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. §§ 983(d)(2)(A)(i) and (3)(A)(ii). Moreover, Willis was not an "owner" of the property within the meaning of 18 U.S.C. § 983(d)(6) at the time the Government's forfeiture was filed, and did not give value for the property when title was later quit-claimed to him, as required by 18 U.S.C. § 983(d)(3)(A)(i). Based on the evidence of substantial and continuous drug dealing at the Defendant Real Property, Willis cannot establish that he was an innocent owner when the Defendant Real Property was conveyed to him, when

18

at that time he was, in fact, in jail for the very offenses involving the property for which he was convicted. Based on a preponderance of the evidence, the Court concludes that the Defendant Real Property at 475 Cottage Drive, Mount Airy, Surry County, North Carolina, is subject to forfeiture.

In addition to these conclusions with respect to Claimant Willis, the Court notes that the Government has obtained an entry of default pursuant to Federal Rule of Civil Procedure 55(a) against all other persons interested in the Defendant Real Property, other than Claimant Willis and Carol Midkiff Mills. It appears that process was fully issued in this action and returned according to law, as outlined in the United States' Declaration in Support of Motion for Entry of Default [Document #54]. No other interested persons have filed a claim or answer or otherwise appeared in this proceeding, and all persons other than Claimant Willis and Carol Midkiff Mills are therefore defaulted. Therefore, no other claims remaining, a Decree and Judgment of Forfeiture will be entered against the Defendant Real Property in this case.

An Order and Judgment consistent with these Findings of Fact and Conclusions of Law will be entered contemporaneously herewith.

This, the 25th day of May, 2006.

United States District Judge